1  RAYMOND J. TITTMANN (SBN 191298)
   rtittmann@wargofrench.com
2  MARK L. BLOCK (SBN 115457)
   mblock@wargofrench.com
3  SCOTT R. LAES (SBN 307894)
   slaes@wargofrench.com
4  WARGO FRENCH LLP
   601 South Figueroa Street
5  Suite 4625
   Los Angeles, California 90017
6  Telephone:   (310) 853-6300
   Facsimile:   (310) 853-6333

7  Attorneys for Plaintiff
8  SENECA SPECIALTY INSURANCE COMPANY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| SENECA SPECIALTY INSURANCE COMPANY, | Case No. |
|---|---|
| Plaintiff, | **SENECA SPECIALTY INSURANCE COMPANY'S COMPLAINT FOR EQUITABLE CONTRIBUTION AND BAD FAITH** |
| v. | |
| DB INSURANCE COMPANY, LTD., F/K/A DONGBU INSURANCE COMPANY, LTD., | |
| Defendant. | |

COMPLAINT

Plaintiff Seneca Specialty Insurance Company ("Seneca"), by and through its undersigned attorneys, hereby files this Complaint against DB Insurance Company, Ltd., f/k/a Dongbu Insurance Company, Ltd. ("Dongbu") and alleges as follows:

# INTRODUCTION

1. This is an action for equitable contribution and bad faith breach of the covenant of good faith and fair dealing to recover from Dongbu due to its wrongful disclaimer of coverage to its insured, CW Piedmont, LLC ("Piedmont"). Seneca was forced to step in and contribute toward settlement in order to protect the interest of the insured, CW Piedmont, due to Dongbu's recalcitrance.

2. Dongbu wrongfully disclaimed coverage for Piedmont on the grounds that the plaintiffs in the underlying action did not allege facts showing a "bodily injury" or "property damage" caused by an "occurrence." Specifically, Dongbu asserted that any damages were not caused by an "accident" covered by the insurance policy. Dongbu further disclaimed coverage because the plaintiffs in the underlying action did not allege facts showing any "personal and advertising injury."

3. Despite being advised on multiple occasions that the underlying complaint and extrinsic facts clearly demonstrated a potential for coverage under Dongbu's policies, Dongbu continued to refuse to participate in the defense of its insured.

4. Dongbu's refusal to fulfill its obligations is unreasonable and a breach of the implied covenant of good faith and fair dealing.

# THE PARTIES

5. Seneca is a New York Corporation with its principal place of business in New York. At all relevant times hereto, Seneca was and is a foreign surplus lines insurer in California.

6. Seneca is informed and believes, and thereon alleges, that Dongbu is a corporation organized and existing under the laws of the Republic of Korea and operates a registered principal place of business in the State of California in Anaheim, California.

Seneca is informed and believes, and thereon alleges, that Dongbu is authorized to transact the business of insurance within the State of California.

## JURISDICTION AND VENUE

7. The Court has personal jurisdiction over Dongbu because it purposefully availed itself of the State of California by committing such acts and omissions within the State of California such that it could reasonably expect to have court actions filed against it within the jurisdiction sufficient to satisfy 28 U.S.C. § 1331.

8. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy exceeds $75,000, exclusive of interest and costs, and under Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202, which grant the United States District Courts jurisdiction to declare the "rights and other legal relations of any interested party making such a declaration, whether or not further relief is or could be sought."

9. Venue is proper for this action pursuant to 28 U.S.C. § 1391 because "a substantial part of the events or omissions giving rise to this claim" occurred within Los Angeles County, which is situated within this district, and the underlying lawsuit was prosecuted in a court located within this district.

## FACTUAL BACKGROUND

**A.    The Dongbu Policies**

10. Dongbu issued a Businessowners Policy to Piedmont under Policy No. CBP 1420739 00, effective from May 6, 2014 to May 6, 2015. The Businessowners Policy was renewed under Policy No. CBP 1420739 02 for the period of May 6, 2015 to May 6, 2016, and again from May 6, 2016 to May 6, 2017 under Policy No. CBP 1420739 03. Collectively, these policies shall be referred to herein as the "Dongbu Policies."

11. Dongbu policy number CBP 1420739 02, effective from May 6, 2015 to May 5, 2016, contains the following material terms:[1]

---

[1] Seneca does not possess copies of the preceding policies, but is informed and believes, and thereon alleges, that those policies contain identical language.

<␊</␊</␊

**SECTION II – LIABILITY**

**A.    Coverages**

    **1.    Business Liability**

        **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damages" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

…

        **b.**    This insurance applies:

            **(1)**    To "bodily injury" and "property damage" only if:

                **(a)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

                **(b)**    The "bodily injury" or "property damage" occurs during the policy period; and

…

            **(2)**    To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

…

**F.    Liability And Medical Expenses Definitions**

…

    **3.**    "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

    **4.**    "Coverage Territory" means:

        **a.**    The United States of America (including its territories and possessions), Puerto Rico and Canada;

…

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and Advertising Injury" means injury, including consequential "bodily injury," arising out of one or more of the following offense:

…

   c.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;

...

17. "Property Damage" means:

   a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

…

18. "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.**   An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.**    Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

   **B.   The Seneca Policy**

12.   Seneca issued a Commercial General Liability Policy to Piedmont under Policy No. SMP 4600266, effective from May 6, 2017 to May 6, 2018 (the "Seneca Policy"). Attached hereto as **Exhibit 1** is a true, correct and complete copy of the Seneca Policy.

4
COMPLAINT

### C. The Underlying Lawsuit Against CW Piedmont

13. On May 19, 2017, 38 current and/or previous tenants of Piedmont (the "Tenants") filed a Complaint against Piedmont in the Superior Court of California, County of Los Angeles (the "Underlying Lawsuit"). The Underlying Lawsuit was assigned case number MC027110. The Tenants alleged that they suffered bodily injuries and property damage due to conditions on the subject property. Specifically, the Tenants alleged causes of action for breach of the implied warranty of habitability, breach of the covenant of quiet enjoyment, and negligence. The bodily injuries alleged include bedbug bites and respiratory infections. Further, some of the Tenants allege that water leaks and bedbug and cockroach infestations destroyed or rendered unusable their personal property.

14. On July 13, 2017, Piedmont issued a Notice of Occurrence/Claim to Seneca, advising Seneca of the Underlying Lawsuit. Seneca is informed and believes, and thereon alleges, that at or near the same time period, Piedmont also issued a Notice of Occurrence/Claim to Dongbu.

15. On August 3, 2017, although the Seneca Policy had incepted only days before the Underlying Lawsuit was filed, Seneca agreed to participate in the defense of Piedmont in the Underlying Lawsuit pursuant to a reservation of rights. Specifically, Seneca determined that "certain of the damages sought to be recovered … *may* be covered under the Seneca policy" and thus, "a potential for coverage exists under Coverage A of the Seneca policy because of the complaint's allegations of "*bodily injury*" and/or "*property damage*." However, Seneca noted that the Seneca Policy only applied to damages sustained by the Tenants after May 6, 2017. Further, Seneca disclaimed coverage for damages arising out of the Tenants' exposure to fungi or bacteria, purely economic damages, and the Tenants' attorneys' fees and costs.

16. On or about August 18, 2017, Piedmont filed its Answer to the Underlying Lawsuit.

17. On or about September 14, 2017, Seneca, through counsel, contacted Dongbu to provide a copy of the Summons and Complaint in the Underlying Lawsuit, and to request that Dongbu join in the defense.

18. On or about October 19, 2017, Dongbu sent a Disclaimer of Coverage to Piedmont, stating that the claims in the Underlying Lawsuit "do not present a potential for coverage under the Dongbu policies" and that "[t]herefore, Dongbu is unable to participate with Seneca in the defense of Piedmont. Specifically, Dongbu asserted that there were no alleged damages caused by a "fortuitous accident," and thus there was purportedly no "occurrence" providing a potential for coverage.

19. The parties in the Underlying Lawsuit thereafter agreed to mediate the case on May 17, 2018.

20. On May 7, 2018, counsel for Seneca contacted Dongbu to address Dongbu's improper disclaimer of covered and demand that Dongbu fully participate in the May 17, 2018 mediation. The May 7, 2018 letter explained that, contrary to the statements in Dongbu's disclaimer, the Complaint in the Underlying Lawsuit contained allegations demonstrating that there is a possibility of coverage under the Dongbu Policies for "bodily injury," "property damage," and "personal and advertising injury." Seneca further identified that if Dongbu continued to improperly refuse to participate in the defense and settlement of the claims in the Underlying Lawsuit, Seneca would move forward with a lawsuit against Dongbu for contribution and bad faith.

21. Dongbu responded by letter dated May 11, 2018, again wrongfully stating that no coverage is owed under the Dongbu Policies and improperly refusing to participate in the defense of Piedmont in the Underlying Lawsuit. Counsel for Seneca did not receive a copy of this letter until May 15, 2018.

22. On May 16, 2018, counsel for Seneca responded to Dongbu, again identifying that the Complaint in the Underlying Lawsuit and extrinsic facts demonstrating potentially covered damages. Specifically, Seneca advised that "at the very least," the Tenants in Unit 106 were forced to leave their apartment due to water damage,

resulting in a potentially covered "personal and advertising injury." Further, as requested by Dongbu in its May 11, 2018 letter, Seneca identified particular allegations and extrinsic facts demonstrating a potentially covered "occurrence" for bodily injury and property damage. Accordingly, Seneca again asked that Dongbu fully participate in the May 17, 2018 mediation.

23. Dongbu responded the same day (May 16, 2018), again wrongly refusing to participate in the defense of Piedmont.

24. The parties to the Underlying Lawsuit attended a mediation on May 17, 2018, which resulted in a global settlement of the Underlying Lawsuit for a total payment of $218,050.00. Of this amount, Seneca agreed to contribute $213,550.00 on behalf of it's (and Dongbu's) insured, Piedmont (the "Settlement Amount").

25. On May 31, 2018, counsel for Seneca sent a letter to Dongbu, advising Dongbu that the May 17, 2018 mediation resulted in a settlement of the Underlying Lawsuit for a total payment of $218,050.00, with Seneca agreeing to contribute $213,550.00 on behalf of Piedmont.

26. Nevertheless, and despite demand therefore, Dongbu continues to refuse to pay its share of the Settlement.

27. Seneca obtained an Assignment of Claims from Piedmont, whereby Piedmont assigned any and all claims it may have against Dongbu with respect to the Underlying Lawsuit and the settlement thereof.

**FIRST CLAIM FOR RELIEF**

(Against Defendant Dongbu)

(Equitable Contribution)

28. Seneca hereby incorporates each and every allegation of the preceding paragraphs as though fully set forth herein.

29. Seneca and Dongbu each provided coverage for Piedmont under their respective policies, and each insurer had a full and complete duty to defend and indemnify Piedmont in connection with the Underlying Lawsuit.

30. Despite its obligation to do so, Dongbu unreasonably refused to contribute towards defense or indemnity in the Underlying Lawsuit on behalf of Piedmont. Seneca, in order to protect the interests of its insured, provided Piedmont with a defense and funded nearly the entire settlement in the Underlying Lawsuit on behalf of Piedmont.

31. Seneca has paid more than its fair share toward the defense and indemnity of Piedmont in the Underlying Lawsuit. Indeed, Dongbu insured Piedmont for three years, while Seneca's policy predates the filing of the complaint in the Underlying Lawsuit by a mere 13 days. Pursuant to the terms of the Dongbu Policies and applicable law, Dongbu has an obligation to reimburse Seneca for the amounts that it should have contributed toward Piedmont's defense and indemnity in the Underlying Lawsuit.

32. Based on the foregoing, Seneca is entitled to a judgment awarding it that portion of the defense and indemnity expenses it paid in the Underlying Lawsuit for which Dongbu was responsible, up to the full amount, plus interest thereon.

**SECOND CLAIM FOR RELIEF**

(Against Defendant Dongbu)

(For Bad Faith)

33. Seneca hereby incorporates each and every allegation of the preceding paragraphs as though fully set forth herein.

34. The claims in the Underlying Lawsuit arise out of Piedmont's landlord/tenant relationship with the plaintiffs in the Underlying Lawsuit.

35. The Complaint in the Underlying Lawsuit alleges facts demonstrating that the Tenants suffered "bodily injury," "property damage," and "personal and advertising injury" as defined in the Dongbu Policies.

36. Extrinsic facts known to Dongbu similarly demonstrate that the Tenants suffered "bodily injury," "property damage," and "personal and advertising injury" as defined in the Dongbu Policies.

37. Seneca properly recognized that the allegations and extrinsic facts demonstrated at least a possibility of coverage. However, Dongbu repeatedly refused to accept coverage for the dispute in the Underlying Lawsuit.

38. Seneca funded the underlying settlement by contributing $213,550.00 on behalf of Piedmont, as well as incurring costs and fees in excess of $70,000.00.

39. The claimed loss was one for which Seneca was not primarily liable, if liable at all.

40. Dongbu's wrongful failure to accept coverage and participate in the settlement of the Underlying Lawsuit was unreasonable and violated its implied covenant of good faith and fair dealing to its insured, Piedmont. *See Gray v. Zurich Insurance Co.*, 65 Cal. 2d 263, 276-77 (1966) ("An insurer … bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy.").

41. Piedmont was also forced to contribute to the settlement of the Underlying Lawsuit, and also incurred costs and fees in amount to be proved at trial. Piedmont has assigned its rights against Dongbu, including to recover these amounts, to Seneca.

42. As a result of Dongbu's wrongful and unreasonable failure to participate in the defense of Piedmont in the Underlying Lawsuit, Seneca has suffered damages in an amount to be proven, plus attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Seneca prays for judgment against Dongbu as follows:

**On the First Claim for Relief for Equitable Contribution:**

1. For damages to Seneca from Dongbu's failure to provide benefits due to Piedmont under the Dongbu Policies;

2. For prejudgment interest on all damages awarded; and

3. For attorneys' fees, witness costs, and costs of litigation incurred by Seneca to procure recovery from Dongbu.

**On the Second Claim for Relief for Bad Faith:**

4.  For damages to Seneca from Dongbu's bad faith failure to participate in the settlement and defense of the Underlying Lawsuit;

5.  For prejudgment interest on all damages awarded; and

6.  For attorneys' fees, witness costs, and costs of litigation incurred by Seneca to procure recovery from Dongbu.

**On All Claims for Relief**

7.  For costs of suit herein; and

8.  For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Seneca Specialty Insurance Company hereby demands a trial by jury in this action.

Dated: June 29, 2018

WARGO FRENCH LLP

By: *s/ Scott R. Laes*
    RAYMOND J. TITTMANN
    MARK L. BLOCK
    SCOTT R. LAES

Attorneys for Plaintiff
SENECA SPECIALTY INSURANCE COMPANY